336 S.E.2d 30

**Wayne WILSON**

v.

**SEMINOLE COAL, INC., et al.**

**No. 16635.**

Supreme Court of Appeals of
West Virginia.

Submitted April 24, 1985.

Decided July 11, 1985.

Rehearing Denied Nov. 8, 1985.

John McFerrin, Charleston, Paul Sheridan, Roger Perry, Logan, for appellants.

W. Bernard Smith, Logan, Paul Goode, Mullens, for appellee.

PER CURIAM:

This dispute involves the use of a certain road running through the town of Kistler, West Virginia, to haul coal from a deep mine operated by the appellee, Seminole Coal, Inc. The appellants live along a short road which intersects with another road that crosses a bridge spanning Buffa-

lo Creek. In their complaint filed in the lower court, the appellants' chief allegation was that the roadway was a private road which the coal company had no right to use. On December 12, 1984, the Circuit Court of Logan County concluded that the road was a public road subject to use by the coal company. We reverse and remand for entry of an appropriate judgment.

■ West Virginia recognizes three ways in which a roadway may become a public road: (1) condemnation, (2) dedication, and (3) public use coupled with official recognition that the road is public, as by maintenance. *Reger v. Weist*, 172 W.Va. 738, 310 S.E.2d 499 (1983); *State ex rel. Riddle v. Department of Highways*, 154 W.Va. 722, 179 S.E.2d 10 (1971). No one contends that the road in controversy became a public road by condemnation or dedication. The appellee's theory of the case has been that the road became a public road by operation of W.Va.Code, 17–1–3, which provides in part that "[a]ny road shall be conclusively presumed to have been established when it has been used by the public for a period of ten years or more, and public moneys or labor have been expended thereon, whether there be any record of its conveyance, dedication or appropriation to public use or not."

■ It is clear that public use alone is not enough to establish the public nature of a road under W.Va.Code, 17–1–3. In addition, "public moneys or labor duly authorized by a public agency or official empowered to maintain, repair or accept such road must be expended on it." *State Road Comm'n v. Oakes*, 150 W.Va. 709, 716, 149 S.E.2d 293, 298 (1966). *See also State ex rel. Riddle v. Department of Highways, supra.*

The appellants candidly admit that the first requirement of the statute, public use, was established in the lower court. The record shows that this short stretch of road has never been chained or posted as a private road and has always been open to public use. According to the appellants' own witnesses, the families living along the

road have never tried to prevent anyone from using the road except when they sought an injunction to prevent the Stevens Coal Company from hauling coal on it.

The battle line on appeal is drawn along the question of whether the road has been maintained by the public for purposes of W.Va.Code, 17–1–3. In the lower court, several residents of Kistler testified that they had never seen any state or county road crews at work on this road.

Wayne Wilson has lived in Kistler since 1930. He has lived at his present location alongside the road since 1959. Prior to that, he lived about 500 or 600 feet away from his present location. During that period of time, he visited a company store near the roadway in controversy two or three times a week. According to Mr. Wilson, no one has ever worked on the roadway except himself. In 1960, he bulldozed and graded the road, fixing potholes and putting down red dog. In 1979, he and his neighbors paid to have the road surfaced with red dog and asphalt.

Kenneth Workman has lived beside the road for nine years. He helped Mr. Wilson pave the road, and has no recollection of any state maintenance.

Don West testified that he called the Wilkinson garage of the State Road Department in 1978 to see if they would grade the road, only to be informed that the Department would not work on the road because it was not the Department's responsibility.

Janice Wilson has lived near the road since 1973. She remembers no instance of public maintenance. Neither does Gary Dale Wilson, who was born in Kistler in 1947, and has lived there for most of his life.

The only witness presented by the coal company was Harold Ronald Simmons, an official with the Planning Division of the Department of Highways. Mr. Simmons testified that Department records in his custody indicated that the state road crews had placed sixteen inches of red dog on the road in 1942. Mr. Simmons was unable to

cite any other instance of public maintenance,[1] but explained that the records maintained by his division did not reflect any routine maintenance performed, such as grading or graveling.

To sum up the evidence, there was some conflict concerning whether the road was treated with red dog in 1942, and absolutely no evidence of any other public maintenance during the last forty-two years.

In previous cases, we have held that isolated and sporadic instances of public maintenance will not suffice to meet the requirements of W.Va.Code, 17–1–3. *See, e.g., Teter v. Teter,* 163 W.Va. 770, 260 S.E.2d 270 (1979) (per curiam); *Blamble v. Harsh,* 163 W.Va. 733, 260 S.E.2d 273 (1979) (per curiam); *State ex rel. Riddle v. Department of Highways, supra; Baker v. Hamilton,* 144 W.Va. 575, 109 S.E.2d 27 (1959). In many of these cases, we have emphasized the lack of authorization by a public official responsible for making maintenance decisions as much as, if not more than, the quantum of work involved, but even authorized work can fail to satisfy the requirements of W.Va.Code, 17–1–3, where it is very infrequent. *See Monk v. Gillenwater,* 141 W.Va. 27, 87 S.E.2d 537 (1955) (single scraping of road); *MacCorkle v. City of Charleston,* 105 W.Va. 395, 142 S.E. 841 (1928) (some grading, draining, and filling of mudholes).[2]

In *Baker,* we were confronted with a rather similar situation where an injunction was sought against the defendants to prevent coal hauling over a roadway. The evidence was perhaps even stronger than in the present case in that there appeared to be some periodic scraping of the road and filling of holes. We stated in *Baker*

that this was insufficient and set the law in Syllabus Point 3:

"In order that a road, by virtue of Section 3, Article 1, Chapter 17, Code, 1931, shall be conclusively presumed to be established as a public road, it must have been used by the public for a period of ten years or more and public moneys or labor, duly authorized by a public agency or official empowered to maintain, repair or accept such road, must be expended on it; and the occasional expenditure of public money or the occasional performance of public labor on such road, which is not so authorized, even though such road has been used by the public for ten years or more, does not satisfy the requirements of the statute or render effective the statutory presumption of its establishment as a public road."

█ It is difficult to imagine maintenance more infrequent or sporadic than one treatment with red dog in forty-two years. Thus, even if the road were surfaced with red dog back in 1942, this is not sufficient to establish the road as a public road under W.Va.Code, 17–1–3. The judgment of the lower court is reversed and remanded for entry of judgment awarding the relief sought by the appellants.

Reversed and Remanded With Directions.

---

1. Mr. Simmons also testified that some work had been done on the bridge connecting the appellants' road with State Route 16. This bridge, which was taken into the State Highway System in 1942, leads to more than one road in Kistler. The appellants admit that this bridge is a public structure. Their dispute is limited to whether their road is a public road.

2. Other states have similar statutes providing that streets used and worked on by the public

are conclusively presumed to be public roads, and courts in these jurisdictions have held that occasional maintenance is not enough to meet the requirements of their statutes. *See Cordwell v. Smith,* 105 Idaho 71, 665 P.2d 1081 (1983); *Rowe v. Harvey,* 307 So.2d 103 (La.Ct.App.1974); *Chargois v. St. Julien,* 280 So.2d 847 (La.Ct.App. 1973); *Jenkins v. German,* 298 S.W.2d 486 (Mo. Ct.App.1957); *Mackey v. Weakley,* 439 S.W.2d 219 (Mo.Ct.App.1969).